IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| NICOLE D. BASS, Individually, and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>SCHELL & KAMPETER, INC., DIAMOND PET FOODS, INC., and DIAMOND PET FOODS,<br><br>Defendants. | No. 3:05-cv-586<br><br>Varlan/Guyton<br><br>CLASS ACTION<br><br>JURY DEMAND |

## CLASS ACTION COMPLAINT

### I. Class Action

1. Plaintiff, individually and as representative of a Class of similarly situated persons more defined below, brings suit against the named Defendant(s) for offering for sale and selling to her **dog food contaminated** with a toxin, aflatoxin, for consumption by her pet.

### II. Jurisdiction and Venue

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. 28 U.S.C. §1332 and subsection (d), and the Class Action Fairness Act of 2005, Pub. L.109-2 (Feb. 18, 2005); and over supplemental state law claims pursuant to 28 U.S.C. §1367. The amount in controversy exceeds five million dollars.

3. Venue is proper in this Court and judicial district pursuant to 28 U.S.C. §1391 and/or Pub. L.109-2 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, or a substantial part of property that is the subject of the action is situated in this judicial district. In this judicial district, Plaintiff



EXHIBIT C

purchased the contaminated dog food made by Defendants, her dog consumed it and became ill, and Plaintiff was forced to take her dog to a Veterinarian and expend monies for treatment. Numerous other pet owners or customers of Defendants purchased the contaminated products and fed their pets in this and district.

4. Rule 23 of the Federal Rules of Civil Procedure applies to class actions as well.

### III. Plaintiff and her Pet

5. At all times material hereto, Plaintiff was and is a citizen of the State of Tennessee and resides in Blount County, Tennessee.

6. Plaintiff obtained by purchase and owns a large dog, a registered breed.

7. This dog is Plaintiff's pet.

8. Plaintiff cares for her dog everyday or makes arrangements for others to do so when she is unable to do so.

9. To care for her dog in part requires that Plaintiff regularly feed it.

10. To care for her dog in part requires that when the dog is or may be ill or otherwise needs treatment, Plaintiff take measures to have her dog treated, which includes taking the dog to a Veterinarian.

### IV. Defendants, Their Business, and Their Advertising and Representations

11. At all times material hereto, Defendants Schell & Kampeter, Inc. and Diamond Pet Foods, Inc. were and are corporations chartered in the State of Missouri and have their principal places of business there as well. Gary Schell is the registered agent for these corporations. Defendant Diamond Pet Foods is a related enterprise or business under which the named corporate defendants operate or do business.

12. Defendants' business includes manufacturing or producing "premium" food for dogs and cats.

13. Defendants offer for sale or sell premium dog and cat foods to dealers across the nation and their business includes international sales as well.

14. Defendants provide substantial information to dog and cat owners about dog nutrition and dog health.

15. Defendants hold themselves out as extremely knowledgeable about which pet foods particular dogs or cats may need as puppies and as they age and advertise and state to the public and pet owners that they manufacture or offer for sale "super premium" pet foods.

16. By advertising or making information available, Defendants give the impression that they are extremely knowledgeable about the needs of pets, including their nutritional needs.

17. Defendants claim that they are not only "one of the nation's leading manufacturers of super-premium dog and cat foods," but that they are "the choice of top-breeders, sporting and working dog owners, and family pet owners world wide."

18. Defendants represent that their "business philosophy is simple: buy the finest quality ingredients, process them with the most advanced system possible, and sell the finished product at very competitive prices."

19. Defendants advertise, hold themselves out, or lead pet owners to believe that they are careful and meticulous in developing super premium dog and cat foods and produce it under controlled conditions.

20. Defendants warrant or represent that they research and purchase "only the highest quality ingredients direct from a single source," and that their "single-source buying insures" that its "products are consistent in taste, smell, and color -- essential for pets since they are far more sensitive to dietary change than humans."

21. Defendants represent that they have and offer "Innovative Ideas from A Market Leader" through research, development, and implementation of market strategies, products, and manufacturing processes to maintain a cutting edge in the pet food industry."

22. Defendants claim that they were the "first pet food manufacturer to successfully market a super-premium product through a mass merchant;" the "first pet food manufacturer to market products containing naturally preserved chicken fats and meals;" the first pet food manufacturer to incorporate Omega-3/Omega-6 fatty acid technology in all ... canine products; and the "first pet food manufacturer to use highly digestible egg and low-ash meals in mid-price products."

23. Defendants also claim "proven palatability superiority over Iams and Science Diet products," two of its leading competitors.

24. Defendants want pet owners to trust them and believe the food products that they offer for sale or sell are "super premium," safe, appropriate for their dogs and cats, and manufactured with exacting standards and high quality control.

25. Defendants offer for sale or sell to the public several "super premium" or premium dog or cat food products, including the following: Diamond Premium Adult Dog Food; Diamond Hi-Energy Dog Food; Diamond Maintenance Dog Food; Diamond Performance Dog Food; Diamond Puppy Food; Diamond Low Fat Dog Food; Diamond

Maintenance Cat Food; Diamond Professional Cat Food; Country Value Puppy; Country Value Adult Dog Food; Country Value High Energy Dog Food; Country Value Adult Cat Food; Professional Reduced Fat Chicken & Rice Dog Food; Professional Chicken & Rice Adult Dog Food; Professional Puppy Food; Professional Large-Breed Puppy Food; Professional Reduced Fat Cat Food; and Professional Adult Cat Food.

26. The products, listed in the above Paragraph, were manufactured, formulated, or produced by or for Defendants at a plant located at Gaston, South Carolina, a plant that they operate, control, manage, own, use, or obtain benefit from.

27. Defendants have held the Gaston plant out as a highly automated, efficient production plant and tout its manufacturing capabilities and expertise.

28. Defendants intended for pet owners, including Plaintiff, to believe its statements, representations, warranties, and claims about the superiority of its pet food products, that they are "super premium," high quality, or good for pets, and that their research, development, and productions are first rate.

29. Defendants manufactured, processed, or produced pet food at its Gaston, South Carolina plant that were contaminated with Alfatoxin and offered for sale or sold to the public through its dealers.

30. These contaminated foods, processed, produced, or manufactured at Defendants' Gaston facility were sold or offered for sale to pet owners or customers in Tennessee, Alabama, Connecticut, Delaware, Florida, Georgia, Kentucky, Maine, Maryland, Massachusetts, Michigan, Mississippi, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia and West Virginia.

31. Defendants only offer for sale or sell its food products through selected dealers.

**V. Plaintiff's Purchase of the Contaminated Dog Food**

32. Plaintiff purchased a dog food manufactured, processed, labeled, or sold by or for Defendant(s) at the Knox Farmers Coop, located in Knox County, Tennessee.

33. Like other purchasers, Plaintiff read or saw certain claims by Defendants about their products, their quality, and their superiority.

34. Plaintiff keeps her dog in her home and on her property.

35. Plaintiff fed her dog a dog food produced or manufactured by or for Defendants at their Gaston, South Carolina plant.

36. After feeding her dog the dog food produced or manufactured by or for Defendants, Plaintiff noticed that her dog showed signs that it was sick.

37. Plaintiff, who highly esteems her dog, took the dog to her Veterinarian.

38. The Veterinarian advised her that her dog's symptoms appeared to be due to the toxin, alfatoxin, contained in the dog food manufactured, produced or processed by or for Defendants.

39. As a result of the purchase of the dog food, Plaintiff has suffered a loss, damage, injury, and sustained damages. Plaintiff suffered direct and indirect losses, injuries, damage and damages, including consequential and incidental damages, including but not limited to the costs of purchasing the contaminated pet food product and replacing it with a safe pet food product, costs for charges for her veterinarian and related treatment for her dog, costs of making an additional trip to a retail store to purchase safe, non-

contaminated pet food, and the costs of travel to the veterinarian for diagnosis and treatment for her dog.

## VI. Defendants' Recall of Contaminated Products

40. Shortly before Christmas, 2005, Defendants announced that certain dog foods produced, processed, made, or manufactured at the Gaston, South Carolina plant were contaminated with Alfatoxin and recalled the products.

## VII. Breach of Warranties & Remedies

41. Defendants breached express warranties to Plaintiff and violated the Uniform Commercial Code.

42. Defendants breached implied warranties to Plaintiff and violated the Uniform Commercial Code.

43. Defendants breached the implied warranty of fitness for a particular purpose by claiming certain of its pet food are fit for a particular breed, age, weight or other characteristics and thereby violated the Uniform Commercial Code.

44. Defendants breached the implied warranty of merchantability. In fact, the dog food purchased by Plaintiff for her dog was not merchantable. This breach violated the Uniform Commercial Code.

45. Plaintiff is entitled to the remedies for breach authorized by the Uniform Commercial Code and law.

## VIII. Negligence

46. Defendants owed Plaintiff a duty to only offer safe, non-contaminated products in the stream of commerce.

47. Though its failure to exercise due care owed Plaintiff and members of the public, Defendants were negligent in producing, processing, manufacturing, and offering for sale the contaminated pet food products it offered for sale and sold Plaintiff.

48. Defendants failed to use sufficient quality control, to do adequate testing, to perform proper manufacturing, production, or processing, and failed to take sufficient measures to prevent the contamination or allow those products to be sold or offered for sale to the public.

49. Defendants knew or should have known that contamination by alfatoxins was a risk that it should guard against and negligently failed to do so.

50. Loss, damage, injury, and damages to the pets of the ultimate purchasers, including Plaintiff, were foreseeable.

51. Defendants negligence proximately caused the loss, damage, injury, and damages to Plaintiff.

## IX. Statutory Unfair or Deceptive Trade Practices Act

52. Plaintiff and Defendants are each a "person" within the meaning of Tenn. Code Ann. §47-18-103.

53. Defendants' offer for sale of sale of their contaminated pet food products is in or affects trade or commerce in Tennessee.

54. Defendants represented to the public and to Plaintiff that its dog food products were premium or super premium and thereby of high quality.

55. In fact, Defendants' pet food products were contaminated and inferior.

56. Defendants violated Tenn. Code Ann. §47-18-104 (a) and sub-part-s of (b).

57. Plaintiff has suffered an ascertainable loss of money or property due to a violation of the Consumer Protection Act.

58. Plaintiff brings a claim for a violation of the Tennessee Consumer Protection Act under Tenn. Code Ann. §47-18-109, including her ascertainable loss of money or property.

## X. Rule 23

59. Plaintiff asks this Court to certify the following Class:

> All persons who purchased Diamond Premium Adult Dog Food; Diamond Hi Energy Dog Food; Diamond Maintenance Dog Food; Diamond Performance Dog Food; Diamond Puppy Food; Diamond Low Fat Dog Food; Diamond Maintenance Cat Food; Diamond Professional Cat Food; Country Value Puppy; Country Value Adult Dog Food; Country Value High Energy Dog Food; Country Value Adult Cat Food; Professional Reduced Fat Chicken & Rice Dog Food; Professional Chicken & Rice Adult Dog Food; Professional Puppy Food; Professional Large-Breed Puppy Food; Professional Reduced Fat Cat Food; and Professional Adult Cat Food that was manufactured, processed, labeled, or produced by Defendants at their Gaston, South Carolina plant in the calendar year 2005 that was contaminated by Alfatoxin, and who purchased any of the above products in the States of Tennessee, Alabama, Connecticut, Delaware, Florida, Georgia, Kentucky, Maine, Maryland, Massachusetts, Michigan, Mississippi, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, or West Virginia.

60. Plaintiff is a member of the Class, sues as a representative party on behalf of all, and avers that the class is so numerous that joinder of all members is impracticable.

61. There are questions of law or fact common to the Class. These common questions include but are not limited to the following:

   a. Whether Defendants sold contaminated pet food products?

   b. Whether Defendants advertised, represented, or held itself out as producing or manufacturing "super premium" or high quality pet foods?

   c. Whether Defendants expressly warranted these products?

d. Whether Defendants impliedly warranted these products for fitness for a particular purpose?

e. Whether Defendants impliedly warranted these products for merchantability?

f. Whether Defendants purported to disclaim any express warranty?

g. Whether Defendants purported to disclaim any implied warranty?

h. Whether any limitation on warranty fails to meet its essential purpose?

i. Whether Defendants intended that the pet food products be purchased by Class members?

j. Whether Defendants intended or foresaw that their pet food products would be fed to the Class members' pets?

k. Whether Defendants recalled their contaminated products?

l. Whether Defendants were negligent in manufacturing or processing the products?

m. Whether using the products as intended – to feed pets – resulted in loss, injury, damage, or damages?

n. Whether Defendants' negligence proximately caused loss or injury to damages?

o. Whether Class members suffered direct losses?

p. Whether Class members suffered indirect losses or damages?

q. Whether Defendants' acts or practices violated state Deceptive Trade Practices Acts?

62. The claims or defenses of the representative party are typical of the claims or defenses of the Class.

63. The representative party will fairly and adequately protect the interests of the Class.

64. Prosecuting separate actions by individual members of the Class would create a risk of either –

a. Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for defendants, the parties who oppose the class, or

b. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

c. Few, if any, Class members have an interest in individually controlling the prosecution of separate actions;

d. Plaintiff is unaware of any litigation concerning the controversy already commenced by members of the class;

e. It is desirable to concentrate the litigation of the claims in this forum;

f. No unusual difficulties are likely to be encountered in the management of a class action.

65. The undersigned Attorneys for Plaintiff and the Class request that the Court appoint them to serve as class counsel first on an interim basis and then on a permanent basis.

66. They will fairly and adequately represent the interests of the class, have identified or investigated the Class's potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action,

know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

67. Plaintiff requests this Court to certify this Class in accordance with Rule 23 and the Class Action Fairness Act of 2005.

**XII. Jury Demand**

68. The Class demands a jury trial on all issues triable by a jury.

**XIII. Prayer for Relief**

Wherefore, premises considered, Plaintiff prays that the Court grant the following relief:

1. That process issue and Defendants be served.
2. That as soon as practical, the Court certify a Class, defined herein.
3. That the Court find that Plaintiff has satisfied Rule 23's and federal law's requirements for certifying a Class.
4. That the Court find that Defendants sold and offered for sale pet foods contaminated with alfatoxin.
5. That the Court find that Defendants intended Class members to believe the representations in their advertisements, statements, and representations and to believe that the pet foods they sold were "super premium" and of the high quality
6. That a trial be held and Defendants be held liable to the Class for – breach of warranty, negligence, and under state statutes prohibiting deceptive trade practices.

7. That the Class be awarded an amount sufficient for direct damages occasioned by Defendants' acts and practices.

8. That the Class be awarded an amount for indirect, consequential, and incidental damages occasioned by Defendants' acts and practices.

9. That the Class be awarded treble damages or special damages authorized by state statutes prohibiting deceptive trade practices, depending upon the State where the Class Member lives.

10. That the Court award reasonable attorney's fees and costs and expenses recoverable under law.

11. That the Court order such other, further relief as the case requires and justice demands.

Respectfully submitted,

/s/ A. James Andrews #15772
905 Locust Street
Knoxville, TN 37902
(865) 660-3993
(865) 523-4623 (Fax)

Perry A. Craft, BPR # 6056
**Craft & Sheppard, PLC**
Attorneys at Law
Shiloh Building
214 Centerview Drive, Suite 233
Brentwood, Tennessee 37027
(615) 309-1707
(615) 309-1717 (fax)

Cost Bond

I am surety for costs.

/s/ A. James Andrews

13