IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **LYNN ANDREWS, et. al.,** | |
| **PLAINTIFFS,** | |
| vs. | CIVIL ACTION NO. 2:06-CV-136-A |
| **SCHELL & KAMPETER, INC.,** | |
| **DEFENDANT.** | |

## RULE 23(d)(1) MOTION TO STAY PROCEEDINGS

### Introduction

Defendant Schell & Kampeter, Inc. d/b/a Diamond Pet Foods ("Defendant") and pursuant to Federal Rule of Civil Procedure 23(d)(1), moves this Court to stay all proceedings in this action pending a determination of class certification issues in virtually identical claims previously filed against it in the Eastern District of Tennessee. The federal class-action lawsuit filed in Tennessee makes almost identical allegations against the same Defendant and actually purports to encompass these Alabama Plaintiffs. *See* Complaint, *Nicole D. Bass v. Schell & Kampeter, Inc. and Diamond Pet Foods, Inc.*, 3:05-cv-586, Doc. 1-C (Exhibit C to Notice of Removal). In addition, the Tennessee action was filed two weeks before

this action. A stay in these proceedings pending class certification of the Tennessee case would promote judicial economy and avoid undue prejudice.

## Background

### A. The Tennessee Action

On December 27, 2005, suit was filed in United States District Court for the Eastern District of Tennessee against Schell & Kampeter, Inc., regarding products sold and manufactured by the Defendant which were allegedly contaminated with alfatoxin. *See* Doc. 1-C. The Complaint alleges causes of action for breach of express and implied warranties, negligence, and violations of the Tennessee Consumer Protection Act. *Id.* The Complaint seeks certification of a class covering every state which Defendant's Gaston, S.C., plant serviced. Specifically, the Complaint asks the Tennessee court to certify the following class:

> All persons who purchased Diamond Premium Adult Dog Food; Diamond Hi-Energy Dog Food; Diamond Maintenance Dog Food; Diamond Performance Dog Food; Diamond Puppy Food; Diamond Low Fat Dog Food; Diamond Maintenance Cat Food; Diamond Professional Cat Food; Country Value Puppy; Country Value Adult Dog Food; Country Value High Energy Dog Food; Country Value Adult Cat Food; Professional Reduced Fat Chicken & Rice Dog Food; Professional Chicken & Rice Adult Dog Food; Professional Puppy Food; Professional Large-Breed Puppy Food; Professional Reduced Fat Cat Food; and Professional Adult Cat Food that was manufactured, processed, labeled, or produced by Defendants at their Gaston, South Carolina plant in the calendar year 2005 that was

> contaminated by Alfatoxin, and who purchased any of the above products in the States of Tennessee, Alabama, Connecticut, Delaware, Florida, Georgia, Kentucky, Maine, Maryland, Massachusetts, Michigan, Mississippi, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, [sic] Tennessee, Vermont, Virginia, or West Virginia.

*Id.*, ¶ 59.

An Answer was filed by Defendant's Tennessee counsel on or about February 13, 2006, attached hereto as Exhibit A. It is most likely that the next step in the Tennessee litigation will involve the Court's decision as to whether to grant class certification encompassing the specified states—including Alabama.

### B.   The Instant Action

On January 11, 2006, Plaintiffs commenced this action against Schell & Kampeter, Inc., by filing a Complaint in the Circuit Court of Lowndes County, Alabama. On January 17, 2006, Defendant was served with a copy of the Complaint. Defendant filed a Notice of Removal and a Corporate Disclosure Notice with this Court on February 13, 2006. Defendant is filing its Answer simultaneously with the filing of this Motion To Stay.

Plaintiffs' Complaint alleges that Schell & Kampeter, Inc. d/b/a Diamond Pet Foods is liable for injuries and damages purportedly sustained through Plaintiffs' use of one or more of Defendant's pet food products. *See* Complaint, ¶ 32. Specifically, Plaintiffs' Complaint alleges causes of action for breach of

express and implied warranties, negligence, violations of the Alabama Extended Manufacturers' Liability Doctrine ("AEMLD"), and unjust enrichment. *See* Complaint. The Complaint also asks this Court to certify the following class:

> [A] class of all persons, businesses or other entities residing in the State of Alabama that purchased, bought, used or otherwise acquired pet foods that were potentially contaminated with a fungal toxin and that were produced, manufactured, [sic] market or sold by the Defendants within the two (2) years preceding the date of the filing of this action. This class includes those persons, business or other entities who purchased the pet foods at issue, as those whose pets suffered injury or death as a result of ingesting said pet foods.

Complaint, ¶ 33. The substantial similarities between this case and the Tennessee action are discussed in detail below.

### Argument

#### A.  Judicial Economy Mandates A Stay

It has long been recognized in the class action context that when similar actions are proceeding in different courts one or more of the courts may stay proceedings before it pending the outcome of the other case. Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1792 (2005). Here, a stay of proceedings pending class certification in Tennessee is necessary and appropriate to achieve the judicial economies that underlie class actions. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974) (stating that a

principal purpose of the class action procedure is the "promotion of efficiency and economy of litigation"); *Thornton v. Mercantile Stores Co.*, 13 F. Supp. 2d 1282, 1288 (M.D. Ala. 1998) (stating that the three primary purposes of the class action procedure are "to increase judicial economy by avoiding multiple suits…[to] provide a method of protecting the rights of those who would not otherwise bring individual claims…[and to] preclude[] inconsistent adjudications and assure[] the defendant that its liability, if any, will be determined in a single proceeding") (citations omitted). Absent a stay, this Court will expend judicial resources supervising pre-trial proceedings and entering rulings in a case over which will likely be duplicative of the Tennessee proceedings. Moreover, without a stay, this Defendant will be significantly and unfairly prejudiced because it will have to duplicate discovery and legal briefing in this Court even though identical proceedings are taking place in Tennessee against this same Defendant regarding the same issues. Finally, if class certification is granted in the Tennessee action, that action will encompass the Plaintiffs here. *See* Doc. 1-C ¶ 59.

Guided by the "policies of justice and efficiency," this Court should exercise its discretion to stay all further proceedings here pending a decision on class certification in the related Tennessee action, which makes almost identical allegations to those asserted in this case and which purports to include these Alabama Plaintiffs. *Davis v. Bayer Corp.*, 2002 U.S. Dist. LEXIS 9151, *3 (E.D.

La. 2002) ("[t]he decision whether to stay proceedings is discretionary, and the exercise of discretion is guided by the policies of justice and efficiency"). The power to stay is well established and particularly apt here. It is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S 248, 254 (1936).

Where, as here, the Tennessee action was filed prior to this action, and the Tennessee action purports to encompass these Alabama Plaintiffs, a stay is particularly appropriate pending class certification in that proceeding. *See Knearem v. Bayer Corp.*, Civil Action 02-2096-CM, 2002 WL 1173551, at *1 (D. Kan. May 7, 2002) (granting motion to stay purported class action which was "one of more than two hundred pending federal cases, nearly half of which [were] purported class actions"). This "first-filed" reasoning has been upheld by the Alabama Supreme Court on numerous occasions. *See*, *e.g.*, *Ex parte Speedee Cash of Alabama*, 806 So. 2d 389, 394 (Ala. 2001) (granting petition for writ of mandamus to stay proceedings in subsequently filed, substantially similar action pending class certification in the first-filed action); *Ex parte Liberty Nat'l Life Ins. Co.*, 631 So. 2d 865 (Ala. 1993) ("[t]he law is clear that the circuit court in which jurisdiction over a controversy is first invoked has exclusive jurisdiction over that controversy until that controversy is concluded, subject only to appellate review"),

*citing Ex parte Burch*, 236 Ala. 662 (1938); *see also Turenne v. Turenne*, 884 So. 2d 844, 849 (Ala. 2003), *quoting Liberty Nat'l* and *Burch*. Moreover, the Alabama Supreme Court also held in *Speedee Cash* that if the first-filed action was certified as a class, and if that class encompassed the plaintiffs in the subsequently filed action, then the subsequently filed action "should be stayed until such time as there is a resolution on the issues common to both actions." *Speedee Cash*, *supra*, 806 So. 2d at 394.

    It is clear from the face of the two complaints that the plaintiffs' claims focus on the alleged injuries sustained by plaintiffs' pets after consuming Defendant's pet food products. For example, the Alabama Complaint alleges that "Plaintiff fed [Defendant's product] to her pets…and said pets thereafter became ill and exhibited symptoms consistent with exposure to aflatoxin," (¶ 28) and the Tennessee Complaint alleges that "[a]fter feeding her dog the dog food produced or manufactured by or for Defendants, Plaintiff noticed that her dog showed signs that it was sick" (¶ 36). In both complaints, plaintiffs purport to represent a class of persons who purchased the defendant's pet food products, which were later voluntarily recalled, and whose pets allegedly became ill after consuming said products.

    There is also substantial similarity between the causes of action in the two complaints. For example, both complaints allege that the Defendant breached the

implied warranties of merchantability and fitness for a particular purpose. *Compare* Complaint, ¶¶ 55-61, *with* Doc. 1-C, ¶¶ 42-45. Both complaints also allege that the Defendant breached express warranties. *Compare* Complaint, ¶¶ 71-75, *with* Doc. 1-C, ¶ 41. Both complaints also allege that the Defendant was negligent in manufacturing, producing, testing, and selling its allegedly contaminated products. *Compare* Complaint, ¶¶ 63-67, *with* Doc. 1-C, ¶¶ 46-51.

The similarities between the two cases are also reflected in the "questions of law and fact common to the class." *Compare* Complaint, first paragraph numbered 38, *with* Doc. 1-C, ¶ 61. For example, these questions include "[w]ere the pet foods at issue fit for the ordinary purposes for which they were intended," (Alabama Complaint) and "[w]hether Defendants impliedly warranted these products for fitness for a particular purpose" (Tennessee Complaint). The Alabama Complaint asks "[d]id the Defendants through their marketing or sales efforts foster the belief or expectation that their pet foods were not contaminated and were superior to other similar products," and the Tennessee Complaint asks "[w]hether Defendants advertised, represented, or held [sic] itself out as producing or manufacturing 'super premium' or high quality pet foods."

Because of the overlapping factual issues and similar legal theories that exist between the pet food case currently pending in Tennessee federal court and this case, work would be needlessly duplicated if pretrial proceedings and discovery

went forward on a parallel track. Moreover, if this Court were not to issue a stay, it would be issuing rulings that could be moot if the Tennessee case is certified as a class action. As the court in *U.S. Bank, Nat'l Ass'n v. Royal Indem. Co.*, noted in granting the defendant's motion for a stay, to hold otherwise would mean that "all of the Court's time, energy, and acquired knowledge regarding the action and its pretrial procedures will be wasted." No. Civ. A 3:02-CV-0853-P, 2002 WL 31114069, * 2 (N.D. Tex. Sept. 23, 2002); *see also Fontanilles v. Merck & Co., Inc.*, No. 04-22799-CIV-HUCK (S.D. Fla. Dec. 14, 2004), slip op. at 2 ("[j]udicial consistency, economy and uniformity among similar…cases would be served by deferring resolution of the remand issue at this time"). The Court should not expend its limited resources "familiarizing itself with the intricacies of a case that would be heard [for class certification purposes] by another judge." *See Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997).

Pending class certification in Tennessee, this Court should also refrain from holding status conferences or issuing discovery orders because "any efforts on behalf of this Court concerning case management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation." *Rivers*, 980 F. Supp. at 1360-61. Accordingly, a stay will conserve judicial resources.

## B.     The Defendant Faces Undue Prejudice Without A Stay

In addition to the waste of judicial resources inherent in proceeding with this action prior to class certification, this Defendant would be substantially prejudiced by duplicative discovery and motion practice if a stay is not issued by this Court. *See American Seafood, Inc. v. Magnolia Processing*, Civ. A. Nos. 92-1030, 92-1086, 1992 WL 102762, at *2 (E.D. Pa. May 7, 1992) ("The duplicative motion practice and discovery proceedings demonstrate that judicial economy and prejudice to the defendants weigh heavily in favor of a stay"). Defendant's counsel in Tennessee and Alabama will have to do substantially the same work – at twice the cost to Defendant – if class certifications issues are being addressed by both district courts at the same time. This would be unduly prejudicial to the Defendant, particularly if certification is granted in the Tennessee action and encompasses the Plaintiffs here.

A stay will not, however, unduly prejudice Plaintiffs in this action. First, any delay that Plaintiffs may experience will be minimal, and the prejudice to the Defendant would far outstrip any harm to Plaintiffs. *See Arthur-Magna v. Del-Val Financial Corp.*, No. CIV.A. No. 90-4378, 1991 WL 13725, at *1 (D. N.J. Feb. 1, 1991) (even if a temporary stay can be characterized as a delay prejudicial to plaintiffs, there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay). Indeed, all of the parties –

including Plaintiffs here – will benefit through increased efficiency if the Tennessee action ultimately encompasses Plaintiffs claims here.

Moreover, this action is not on the eve of trial. Discovery has not yet begun. Plaintiffs have expended limited resources to date, and they will not be prejudiced by a limited delay. The Defendant is not asking this Court to stay these proceedings indefinitely. The Defendant is only asking the Court to issue a stay while class certification is pending in Tennessee. Because at least one other class action has been filed against Defendant alleging liability for the potentially contaminated food at issue in this suit prior to the filing of this action, and because the federal class-action lawsuit filed in Tennessee purports to encompass these Alabama Plaintiffs, this Court should stay all proceedings in this civil action pending class certification in the Tennessee action.

## Conclusion

For the foregoing reasons, Defendant Schell & Kampeter, Inc. d/b/a Diamond Pet Foods respectfully requests that this Court grant its motion to stay all proceedings in this case pending a determination on class certification of the claims previously filed against it and now pending in the Eastern District of Tennessee.

DATED this 21st day of February 2006.

        Respectfully submitted,

        _S/Dennis R. Bailey_____
        Dennis R. Bailey (BAI028)
        Robert C. Ward, Jr. (WAR038)
        Bethany L. Bolger (BOL035)
        Attorneys for Defendant Schell & Kampeter, Inc. d/b/a Diamond Pet Foods

Of counsel:
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36101-0270
(334) 206-3234 (Bailey phone)
(334) 206-3229 (Ward phone)
(334) 206-3194 (Bolger phone)
(334) 481-0031 (fax)
drb@rsjg.com (Bailey e-mail)
rcw@rsjg.com (Ward e-mail)
bbolger@rsjg.com (Bolger e-mail)

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this the 21st day of February 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice of such filing to the following:

    Jason A. Stuckey (jstucky@cochranfirm.com; jason@gulaslawfirm.com)

    Theodore A. Gulas (ike@gulaslawfirm.com)

        __S/Dennis R. Bailey_____
        Of counsel