### IN THE UNITED STATES DISTRICT COURT FOR
### THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| LYNN ANDREWS, et. al., | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06-CV-136-A |
| | ) | |
| SCHELL & KAMPETER, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

## DEFENDANT'S MOTION TO CONTINUE SCHEDULING CONFERENCE

**COMES NOW** Defendant Schell & Kampeter, Inc. d/b/a Diamond Pet Foods and hereby moves this Honorable Court to continue the Rule 16 scheduling conference set for February 13, 2008. (Doc. 20.) In support of this motion, Defendant would state as follows:

1. A settlement has been reached in the related Tennessee class action in this case. *See* Settlement Agreement, attached hereto as Exhibit A.

2. Said agreement includes claims against Defendant arising out of transactions occurring in Alabama, among other states. *See* Ex. A, pg. 3.

3. A settlement fairness hearing is scheduled in Tennessee federal court for March 26, 2008, to consider whether to approve the settlement and a request

for attorneys' fees.  *See* Diamond Pet Food Settlement Website, attached hereto as Exhibit B.

4.     Defendant asserts that Plaintiffs' claims could potentially be resolved by the Tennessee settlement fairness hearing and request that this Court continue the scheduling conference to take place after said hearing, should one still be necessary at that time.

5.     Undersigned counsel have attempted to contact Plaintiffs' counsel by telephone and electronic mail regarding this motion but have not received any response thereto.

**WHEREFORE,** Defendant Schell & Kampeter, Inc. d/b/a Diamond Pet Foods respectfully requests that the Court continue the Rule 16 scheduling conference currently set for February 13, 2008.

**RESPECTFULLY SUBMITTED** this the 8th day of February 2008.

> */s/ Bethany L. Bolger*
> **DENNIS R. BAILEY (BAI028)**
> **ROBERT C. WARD, JR. (WAR038)**
> **BETHANY L. BOLGER (BOL035)**
> **Attorneys for Defendant Schell & Kampeter, Inc. d/b/a Diamond Pet Foods**

**OF COUNSEL:**
**RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.**
184 Commerce Street
Post Office Box 270
Montgomery, Alabama   36101-0270
Phone:        (334) 206-3100
Facsimile:    (334) 481-0828

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 8th day of February 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice of such filing to the following:

Jason A. Stuckey (jstucky@cochranfirm.com; jason@gulaslawfirm.com)
Theodore A. Gulas (ike@gulaslawfirm.com)


*/s/ Bethany L. Bolger*
**OF COUNSEL**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE, KNOXVILLE DIVISION

| | | |
|---|---|---|
| NICHOLE D. BASS, Individually, and<br>On behalf of similarly situated persons,<br>Plaintiff, | )<br>)<br>)<br>) | <div style="border:1px solid red">**EXHIBIT A**</div> |
| v. | )<br>) | No. 3:05-CV-586 |
| | ) | **JUDGE VARLAN** |
| SCHELL & KAMPETER, INC., | ) | **MAGISTRATE JUDGE GUYTON** |
| d/b/a DIAMOND PET FOODS, INC., | ) | **CLASS ACTION** |
| and DIAMOND PET FOODS, | )<br>) | |
| Defendant. | )<br>) | **JURY DEMAND** |

### SETTLEMENT AGREEMENT

This Proposed Settlement Agreement is made and entered, as of October 1, 2007, subject to Court approval, on behalf of the putative Plaintiff Class defined below and Schell & Kampeter, Inc., d/b/a Diamond Pet Foods, Inc., and Diamond Pet Foods ("Defendant"):

WHEREAS, Plaintiff has alleged that, in connection with the recall of certain pet food in the year 2005 and up to and including the date of this settlement, Defendant breached its warranties, was negligent, and violated state statutes prohibiting unfair or deceptive acts or practices and other theories;

WHEREAS, Plaintiff contends that she and other members of the class have sustained damages and other injuries as a result of Defendant's actions;

WHEREAS, Defendant denies each and every allegation of unlawful or improper conduct, damages, or other injuries;

WHEREAS, after arm's length negotiations between Counsel for Plaintiff and the Class (as defined below) and Defendant, this Proposed Settlement Agreement has been reached;

WHEREAS, the class representative and Counsel for Plaintiff have concluded, after inquiry and investigation of the facts and carefully considering the circumstances that it is in the best interest of the Class to enter into this Settlement Agreement, and both the Class Representative and Counsel for the Class consider this Settlement to be fair, reasonable, adequate, and in the best interests of the Class;

WHEREAS, Defendant has concluded that it will enter into this Settlement Agreement, among other reasons, in order to avoid the further expense, inconvenience, burden, distractions, uncertainty, and risk of litigation;

NOW, THEREFORE, it is agreed by the undersigned on behalf of the Class and Defendant that all claims as set forth in the Amended Complaint and specifically defined below be fully settled and compromised on the following terms and conditions:

## I. DEFINITIONS

Under this Settlement Agreement, the following terms shall have the meanings set forth below:

A.  "**All claims**" means all claims, demands, actions, suits, and causes of action against Defendant and any of its officers, directors, employees, managers, supervisors, agents, representatives, insurers, whether known or unknown, asserted or unasserted, under or pursuant to any statute, regulation or common law that any member of the Class has, may or ever have or had, relating in any way to the conduct, acts, omissions, that were or could have been alleged in the Amended Complaint (Doc.10) relating to any alleged use of recalled products, alleged afalatoxin problems and the Defendant's recall and claims for any damages or injuries, of whatever type or description, arising or that may have arisen as a result of any acts or omissions of

2

Defendant or as a result of the recall to the Class or any member thereof. "All claims" includes those claims specifically set out by the Court as they relate to the recall.

B.    **"Recall"** means the recall by or for Defendant of certain specified Diamond Pet Food products before, in, or about December, 2005, and January, 2006, relating to certain products manufactured at Defendant's plant in Gaston, South Carolina between September 1, 2005 to December 11, 2005.

C.    **"Product(s) subject to the recall"** means Defendant's pet food products that (1) were made or manufactured by Defendant at its Gaston, South Carolina plant,

**AND**

(2) that were offered for sale, sold, or provided to Class members by dealers or retailers or otherwise made available to or used by them for their pets,

**AND**

(3) that were purchased, obtained, used, made available, or intended to be purchased or obtained, or intended to be purchased or obtained by Class members for their pets in the following States or areas:  Tennessee, Mississippi, Alabama, Georgia, Florida, South Carolina, North Carolina, Virginia, Kentucky, Ohio, Michigan, West Virginia, Pennsylvania, Maryland, Delaware, Rhode Island, New Jersey, New York, Massachusetts, Vermont, Maine, New Hampshire, and the District of Columbia;

**AND**

(4) that were one of the following brands – Diamond Premium Adult Dog Food, Diamond Hi-Energy Dog Food, Diamond Maintenance Dog Food, Diamond Performance Dog Food, Diamond Puppy Food, Diamond Low Fat Dog Food, Diamond Maintenance Cat Food, Diamond Professional Cat Food, Country Value Puppy, Country Value Adult

Dog Food, Country Value High Energy Dog Food, Country Value Adult Cat Food,

Professional Reduced Fat Chicken & Rice Dog Food, Professional Chicken & Rice Adult

Dog Food, Professional Puppy Food, Professional Large-Breed Puppy Food,

Professional Reduced Fat Cat Food, and Professional Adult Cat Food;

**AND**

(5)  that were identified by the following manufacturing code information: a "Best By"

date between March 1, 2007 and June 10, 2007.  For 18-55 lb bags, a capital "G" is in the

11th or 12th position from left of the date code.  For 4 lb to 8 lb bags, a capital "G" is in

the 9th position from left of the date code.

**OR**

Diamond professional for Adult Dogs with a "Best By" date of January 29, 2007.

D.     The **"Class"** means the Settlement Class preliminarily certified by the

Court and is defined as set forth and approved by the Court, as follows:

> All persons and business entities who purchased "product(s) subject to the recall"
> as defined in Section "C" above and either discarded the product as a result of the
> recall or fed the product to their dog and subsequently incurred an expense or
> damages as a result of feeding the product as further defined in Section III. B
> below.

E.     "**Class counsel**" means A. James Andrews, who is designated "lead

counsel," and Perry A. Craft.

F.     "**Objection Date**" means the date by which members of the Class must

file with the Court and serve on Class counsel and counsel for Defendant notice of any

objection or opposition to the Settlement Agreement or any part or provision thereof.

G.     "**Settlement Claims Administrator**" (SCA) means the Garden City

Group, 105 Maxess Road, Melville, NY 11747, a competent firm selected by the parties

and approved by the Court designated to manage specified parts of the notice program, process claims, issue checks for Class members, and related tasks as set forth herein. The SCA shall be jointly supervised by Plaintiff's Lead Counsel and counsel for Defendant, and copies of all information, data, or correspondence sent to the SCA by counsel of record or by Defendant shall be simultaneously sent to opposing counsel. Defendant shall pay all reasonable costs and expenses of the SCA relating to this Settlement Agreement.

   H. **"Settlement Fund"** shall mean the amount set aside by the Defendant to settle all claims and attorneys fees and costs in this case and shall define the Defendant's maximum liability under this settlement agreement.

   I. **"Value of the dog"** means the fair market value of a dog. It does not include loss of affection, mental anguish, emotional suffering, and does not include the costs of burial or cremation. A dog that is a recognized breed shall be valued by the breed, recognized type, or other extraordinary factor, (example: seeing-eye dog, a drug sniffing dog), its age, its medical condition, and other similar factors. The "value of the dog" as to a non-officially recognized breed, or a mixed breed, shall be deemed not to exceed $200.00. Under no circumstances shall the fair market value of a dog exceed $1,000.00.

## II. COURT APPROVAL, CLASS NOTICE, AND OBJECTION PROCEDURES

   A. **Reasonable Efforts**: Class counsel and Defendant's counsel agree that they will use reasonable efforts to recommend and obtain approval of this Settlement Agreement to the Court, then carry out its terms, and support it in all public statements.

   B. **Motion for Preliminary Approval**: Lead counsel shall submit to the

Court within 30 days of the signing of this agreement a motion for preliminary approval of the Settlement Agreement, including a motion for certification of a settlement class, together with a proposed approval order substantially in the form attached as <u>Exhibit 1</u>.

C.    <u>**Stay**</u>: Upon moving for a Motion for Preliminary Approval, the parties will move the Court to stay other matters in the litigation except those any party or the party's counsel deems convenient or necessary to implement, advance, or further the Settlement Agreement or process.  Before filing any motion, the parties shall consult with each other and certify to the Court that they have so consulted.

D.    <u>**Notice**</u>

1.    The notice to the class shall be in the form attached as <u>Exhibit 2</u>.

2.    In the motion for preliminary approval of this Settlement Agreement, Lead Counsel for the Class shall apply to the Court for an order authorizing notice by first class mail where Defendant's insurance company actually possesses the name and address of a putative class member.  The mailing shall occur within thirty (30) days of the Court's preliminary approval.

3.    Subject to approval by the Court, the notice shall be reasonably disseminated by publication in newspapers, periodicals, or other sources, including media distributed electronically, within sixty (60) days after the Court preliminarily approves the Settlement Agreement. The list of publications and expected publication dates is set forth in <u>Exhibit 3</u>.  Lead Counsel may cause the notice to be posted on lead counsel's website as well.

4.    Defendant shall bear all costs of the notice, whether by mail, publication, website, or otherwise.  However, Defendant shall not be required to bear the cost

associated with lead counsel's website or the posting on lead counsel's website, or any separate communications or advertisements by any plaintiff, plaintiff's counsel, or lead counsel.

5.      The SCA shall be responsible for mailing notice – from addresses that the Defendant has in its custody or control, and for placing notices in periodicals, newspapers, and other sources, including electronic sources. For mailings, the SCA shall utilize the national change of address service through the United States Postal Service prior to mailing. When notices are returned because they were sent to incorrect addresses, then the SCA shall mail the notice to the new addresses.

6.      After the mailing has been completed, Defendant shall certify to the Court that addresses that it had or possessed were given to the SCA for mailing, and the SCA shall certify that it mailed the notices and provide pertinent information regarding change of addresses. The SCA shall also certify the dates that notices were actually published by each newspaper, periodical, or other sources, provide a true copy of each notice in each publication, and provide other pertinent information relative to the publication and notice.

7.      Lead Counsel or counsel for Defendant, as the case may be, shall cooperate to make reasonable inquiry to determine that the notices are actually published or provided.

E.      **Opt Out**:  All putative class members will be given sixty (60) days from the date of the last mailing (not including remailings due to change of address) or publication of the notice to opt out of the class. A putative class member must opt out by notifying the SCA in writing postmarked by _____ of their intention to opt out of this settlement.  The putative class member must include his/her name, address, telephone and

signature.

     F.    **<u>Procedures for Objecting to the Settlement</u>**:  Any member of the Class

may appear at the hearing on final approval of the Settlement to present any objection to

the Settlement or any of its terms or provisions, including costs, attorney fees, or

otherwise.  The objecting class member shall be subject to examination by counsel for the

Defendant and class counsel at this hearing.  The Court may deny a Class member the

opportunity to speak or object who does not set forth in writing all reason(s) for each

objection and file the objections and reasons therefore with the Court and provide a copy

to Lead Counsel and Counsel for Defendants not less than thirty (30) days prior to the

hearing.  By filing an objection, each such person understands that Class Counsel or

Counsel for Defendants may notice such objecting person for and take his or her

deposition consistent with the Federal Rules of Civil Procedure, and that said objector(s)

shall submit to a deposition in Knoxville, Tennessee, and shall further submit any

documentary evidence or other tangible things upon which they rely in support of their

objection.

     Failure by an objector to make himself or herself available for a deposition or

comply with expedited discovery requests may result in the Court striking said objector's

objection and otherwise denying that person the opportunity to make an objection or be

further heard.  The Court reserves the right to tax the costs of any such discovery to the

objector or the objector's counsel should the Court determine that the objection is

frivolous or is made for an improper purpose.

     G.    **<u>Motion for Final Court Approval and Entry of Final Judgment</u>**: The

Motion for Final Court Approval of this Settlement will be set as soon as is practical and:

The Court in any final approval must find:

a)      that it has jurisdiction over the parties and disputes for purposes of the Settlement, make findings or approve the Settlement under Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act, and other applicable law, approve the proposed Notice and find that the Notice provided in the Settlement Agreement constitutes reasonable and the best practicable notice reasonably calculated under the circumstances to apprise members of the Class of the pendency of this action, the terms of the Settlement, the right to object, and the right to appear at the hearing on final approval, that the notice is adequate and sufficient to all persons entitled to receive such notice, and meets the requirements of due process and other rules or laws.

b)      that  the Court has exclusive and sole jurisdiction over this settlement, including its administration, consummation, claim procedures, enforcement, and any other issues or questions that may arise, and all proceedings both before and after the final judgment becomes final and is no longer subject to appeal, and over enforcement of the final judgment.

c)      that there is no just reason for delay and that the Final Judgment shall be final and entered.

d)      that any and all claims class members may have for any and all causes of action against Schell & Kampeter, Inc., Diamond Pet Foods, any of its related companies, its agents, insurance company and assigns will be forever extinguished in consideration of the payments made under this agreement, except for those parties who have opted out pursuant to Section II E.  All claims of class members who did not timely return a claim form or opt out shall be forever extinguished and

9

barred. This settlement shall extinguish any and all damages and claims arising out of the use of recalled products by class members. The settlement shall not in any way impair any legal rights of Defendant as to any other entities.

          e)      Effect of Approval of Settlement and Final Judgment: If the Court approves the Settlement and the Final Judgment, the claims procedures and distribution procedures under the Settlement and Final Judgment shall commence.

       3.     **Effect of Disapproval of Settlement and Final Judgment**: If the Court does not approve the Settlement Agreement or Final Judgment, but suggests modifications, Lead Counsel for the Class and Class Representative and Counsel for Defendant and Defendant reserve the right to consent to the modifications. If the Court does not approve the Settlement Agreement or Final Judgment, then Defendant or the representative plaintiff may terminate this Settlement Agreement and it shall be null and void except that Defendant shall pay the costs for notice set forth in paragraph II D and otherwise as provided in this Settlement Agreement. If the Court does not approve the settlement, the defendant reserves the right and does not waive the right to assert any and all defenses, including but not limited to any applicable defenses under Rule 23 of the Federal Rules of Civil Procedure.

## III.    STRUCTURE OF SETTLEMENT AND CLAIMS' PROCEDURES

The estimated face amount of this Settlement is $3,100,000.00. This Settlement consists of a monetary payment by Defendant, non-monetary, but valuable benefits to Class members, and shall be implemented by and through a mandatory claims process set forth below. Disagreements shall be referred to a third party neutral for a fair, quick, expeditious, inexpensive and binding resolution on Defendant and Class members.

A.    **Settlement Fund**: Based on projected claims, the parties have agreed to establish a settlement fund of $1.86 million. The attorneys representing the class will receive 25% of this amount ($465,000.00 in attorney fees) within ten (10) days of final approval and entry of the Final Judgment by the Court and the Judgment becoming non-appealable. However, because the actual number of claims is difficult to predict, the Defendant has agreed to provide up to $1.24 million in additional settlement funds as needed. The amount of class counsel's attorneys fees will not be affected by additional contributions (if any). Within ten (10) days after final approval and entry of the final Judgment and the final judgment becoming non-appealable, the defendant shall pay an amount to the SCA sufficient to pay for the proffered, legitimate claims received by the SCA. The Defendant shall also from time to time provide sufficient funds to the SCA such that the SCA can fulfill its responsibilities pursuant to this settlement agreement.

B.    **Class Members' Damages and Injuries Due to Recall: Claims**

The parties have agreed to the following subclasses. Class members shall be entitled to those benefits conferred upon each subclass, as may be applicable, as defined below. Each class member shall be bound by the claims procedures defined below:

1.    **The Class member purchased but never used a recalled pet product, never fed his/her pet or animal the recalled product, and the class member discarded or retained the product, did not return the product to the dealer or otherwise exchange the product.**

Upon completing a claim form, substantially in the form similar to Exhibit 4, the Class Member shall submit the same together with all other documentation, if any, by regular U.S. mail (first class) to the SCA, who shall send a copy to Defendant's representative. Though the SCA may seek clarification or other simple information, unless the SCA in fact does so or the Defendant's representative makes a substantial,

reasonable good faith objection (for example, without limitation: the consumer purchased a product that was not subject to the recall; the product was purchased in a State or area not subject to the recall; the product was purchased in a retail outlet that did not distribute the Defendant's products; that the product was returned or otherwise exchanged by the customer), after clarification and determination of the validity of the Class Member's claim, the SCA shall approve the claim if it fairly and reasonably establishes the type of damage specified in this sub-paragraph.

In order to establish a claim, a Class Member must provide sufficient information about the purchase or use (or non-use) of the product to satisfy the SCA that the purchaser did, in fact, purchase or otherwise receive (example: as a gift) a product subject to the recall. Examples of "sufficient information" to satisfy the SCA would include, without limitation, a sworn statement signed by the purchaser representing the nature of the purchase, the purchase date, the name of the dealer from whom the product was purchased, the quantity purchased, the product purchased and information as to whether the product was used, not used, discarded, returned, exchanged; cancelled check(s); copies of receipts (such as cash register receipts) from the dealer; copies of credit card summaries. The Class Member in submitting a claim shall receive one of the following:

a.    Payment in accordance with the schedule attached as <u>Exhibit 5</u> up to a maximum value of two (2) bags of pet food;

<u>OR</u> in the event that total claims exceed the amount of the settlement fund,

b.    A *pro rata* share of the net proceeds of the Settlement fund not to exceed the actual or estimated purchase price of up to two (2) bags of the pet food described by

the Class Member.

'

**2.    In addition to having purchased or used a recalled pet food product, after a Class member learned about the Recall, the Member took the pet or animal to a veterinarian for aflatoxin – specific testing and the tests proved negative for aflatoxin related problems.**

Upon completing a claim form, substantially in the form similar to Exhibit 4, the Class Member shall submit the same together with all other documentation, if any, regular U.S. mail (first class) to the SCA who shall provide a copy to and Defendants' representative.  Though the SCA may seek clarification or other information, unless the SCA in fact does or the defendant's representative makes a substantial reasonable good faith objection (for example, without limitation:  the consumer purchased a product that was not subject to the recall; the product was purchased in the state or area not subject to the recall; the product was purchased in a retail outlet that did not distribute the defendant's product; the product was returned or otherwise exchanged by the customer; the veterinary bill was not incurred or was unreasonable or unnecessary; etc.)

After clarification and determination of the validity of the class member's claim, the SCA shall honor and approve the claim if it fairly and reasonably establishes the type and damage specified in this subparagraph.

In order to establish a claim, a class member must provide sufficient information about the purchase or use of the products to satisfy the SCA that the purchaser did in fact purchase or otherwise receive (example:  as a gift) a product subject to the recall. Examples of "sufficient information" to satisfy the SCA would include, without limitation, a sworn statement signed by the purchaser representing the nature of the purchase, the purchase date, the name of the dealer from whom the product was purchased, the quantity purchased, the product purchased and information as to whether

13

the product was used, not used, discarded, returned, exchanged; cancelled checks; copies

of receipts (such as cash register receipts) from the dealer; copies of credit card

summaries or cancelled checks.

With regard to the veterinary bill, in establishing the cost of the veterinary bill or

charge, the Class member must provide a billing, letter, or writing from a veterinarian or

testing laboratory or facility, so as to reasonably establish veterinarian charges and/or

testing charges, and that such charges were, in fact, incurred and related to aflatoxin

testing.    Though the SCA may seek clarification or other information, unless the SCA in

fact does so or the Defendant's representative makes a substantial, reasonable good faith

objection (i.e., the consumer purchased a product that was not subject to the recall; the

product was purchased in a State or area not subject to a recall, the product was

purchased at a retail facility that did not carry the Defendant's products; veterinarian bill

includes costs for a unrelated services; the veterinarian bill was not incurred or was not

reasonable), after clarification, the SCA shall  approve the claim if it fairly and

reasonably establishes the type of damages specified in this sub-paragraph.  The SCA

shall be entitled, as necessary, to obtain from the Class Member specific authorization for

the SCA (or counsel on behalf of the Defendant) to obtain any and all veterinary records

as may be deemed to be necessary in their determination of the claim and in regard to any

potential objections thereto.  A Class Member having submitted a claim deemed valid

shall receive the following:

a.        A full or *pro rata* reimbursement of the actual cost of one visit to a

veterinarian and any reasonable or necessary test(s) performed by or upon the

recommendation or referral of the veterinarian to determine whether the animal had a

14

symptom or illness directly caused by aflatoxin. However, the Defendant shall reimburse only for the share of the veterinary bill, costs, tests, or examination, and any preventative medical treatment or medications to determine whether the animal actually was affected by an aflatoxin, and shall not be required to reimburse for any other or unrelated portion of the veterinary bill. Furthermore, Defendant shall reimburse only for veterinary or related charges deemed reasonable, necessary and typical within the Class Member's community and in no event shall the Defendant be liable for a veterinary bill or bills for related tests, exceeding the amount of $200.00; AND if applicable, the payment provided in Section 1.

3. **The Class member's dog actually ate a recalled product and/or was offered a product subject to recall and was treated for aflatoxin- related symptoms but did not die from aflatoxin-related health issues.**

Upon completing a claim form, substantially in the form similar to Exhibit 4, the Class Member shall submit the same together with all other documentation, if any, by regular U.S. mail (first class) to the SCA who shall send a copy to Defendants' representatives. The Class Member may use a billing, letter or writing from a veterinarian or testing laboratory or facility. Though the SCA may seek clarification or other information, unless the SCA in fact does so or the Defendant's representative makes a substantial, reasonable good faith objection (*i.e.*, the consumer purchased a product that was not subject to the recall; the product was purchased in a State or area not subject to a recall, the veterinarian bill includes costs for a rabies vaccination or other unrelated service, the charges are unreasonable and specify in detail why), after clarification, the SCA will consider and approve the claim if it fairly and reasonably establishes the type of injury or damages specified in this sub-paragraph.

If the SCA approves the claim, he shall so notify the Class Member, who shall receive the following:

        a.      A full or *pro rata* reimbursement of the actual cost of aflatoxin related veterinary examination(s), testing, and treatment for aflatoxin-related symptoms, and veterinary medications prescribed or specified by a veterinarian and any test(s) on the animal to determine whether the animal had an aflatoxin-related illness resulting from the animal's ingestion of the recalled product up to a maximum payment of $1000.00 per dog; AND if applicable, the relief provided in Section 1.

**4.     Death of a dog caused by aflatoxin consumed by dog from one or more of Defendant's recalled products.**

Upon completing a claim form, substantially in the form similar to Exhibit 4, the Class Member shall submit the same together with all other documentation, if any, by regular U.S. mail (first class) to the SCA, who shall send a copy to Defendants' representatives. The Class Member may use a billing, letter or writing from a veterinarian or testing laboratory or facility regarding the veterinarian bill(s), invoice(s), and costs for testing to support the claim.

If death of a pet or animal is claimed, the Class member shall explain in detail the cause of death, the date of death, and licensed veterinarian's statement that connects the dog's death to the aflatoxin ingested from a product subject to the recall. Though the SCA may seek clarification or other information, unless the SCA in fact does so or the Defendant's representative makes a substantial, reasonable good faith objection or offers a valid defense (*i.e.*, the consumer purchased a product that was not subject to the recall; the product was purchased in a State or area not subject to a recall; the product was purchased in a retail facility that did not offer the Defendant's products for sale; the

veterinarian bill includes costs for unrelated charges, the charges or assumptions are

unreasonable and specify in detail why, the value of the pet or animal is excessive, the

death of the pet was not due to aflatoxin), and after clarification, the SCA will consider

and approve the claim if it fairly, reasonably, and satisfactorily establishes the type of

injury or damages specified in this sub-paragraph.

If the SCA approves the claim, the SCA shall send the Class Member the

following:

The fair market value or a pro rata share of the market value of the dog up to a

maximum of $1,000 per dog; AND if applicable the relief provided in Section 1 and/or

Section 3.

**5.     A putative class member under Section 2, 3, or 4 above, who has
already settled a claim with the Defendant or the Defendant's insurance carrier and
who contends that he/she may be legally entitled to other relief under this
settlement.**

The Defendant and its insurance carrier have established a claims handling

facility and claims handling procedures, which facility and procedures were in place prior

to the filing of this lawsuit. Pursuant to those procedures, the Defendant and its insurance

carrier have, heretofore, resolved approximately 1,204 claims. The types of claims which

have heretofore been resolved, include, generally and without limitation the following:

claims in which veterinary bills for examination, testing or treatment have been incurred;

claims in which pets have died and claims for refunds having to do with monies

expended for the purchase of Diamond Pet Food products.

Additionally, pursuant to the recall which was effectuated by the defendant, an

estimated 350,000 bags of dog food have been returned, replaced or refunds issued.

Plaintiff's counsel has requested from defendant and defendant has supplied to plaintiff's

counsel information necessary for plaintiff's counsel to generally review settlements heretofore made. While plaintiff's counsel does not represent that it has reviewed complete details of each and every such settlement, plaintiffs' counsel agrees that the settlements heretofore made by the defendant appear to be generally reasonable and generally consistent with the outline, intent, and scope of this proposed settlement document.

If a Class member in this category believes that they are legally entitled to reopen their claim and vacate their release, the Class member must file a claim form substantially in the form similar to Exhibit 4 and shall submit it together with documentation, if any, by regular U.S. mail (First class) to the SCA who shall provide a copy to defendant's representatives. The class member must demonstrate to the SCA that they are legally entitled (e.g. fraud, coercion) to reopen their claim and vacate the release. The class member must also submit with the claim form a valid check payable to the SCA in the amount equal to all monies paid to the class member by Diamond or its insurance company. A dishonored check will result in the denial of the claim. If the claimant does not have any legal basis to reopen their claim and vacate the release, the SCA shall deny the claim, notify the Class member with forty-five (45) days and return the check. If the SCA determines that a Class member is legally entitled to reopen their claim and vacate the release, the SCA shall process the claim pursuant to Section III B. 1, 2, 3, or 4 within twenty (20) days of notification.

C.     **Notification to Claimants and Binding Arbitration**

The SCA shall notify a claimant with forty-five (45) days of receiving the claim form and all necessary information to decide the claim. At that time, the SCA shall notify

the claimant whether the claim will be accepted and paid within the terms of this agreement or rejected. Within ten (10) days of receiving notification, if a Class member or the defendant disagrees with any determination by the SCA, either the Class member or defendant may challenge the decision by notifying the SCA in writing, explaining in detail the reason for the disagreement. Thereafter, a third party neutral selected by the SCA will fairly review the claim, seek any clarification from the Class member or defendant and schedule a telephone conference not to exceed one-half hour. The third party neutral will announce his or her decision by brief written decision (1 page or less) within seven (7) days of the telephone conference. The third party neutral's decision will be binding on all parties.

     D.    **Miscellaneous Provisions**

        1.     When death of a pet or animal, veterinarian's bills or invoices, bills or invoices for testing, medicines or special treatments are claimed, at defendant's specific request, a class member shall timely provide authorization for the SCA, Defendant or Defendant's counsel, to obtain copies of any documents or records directly from a provider or other source, and when feasible, shall timely provide true copies of relevant requested records in his or her possession. At Defendants, Defendant's counsel or SCA's specific request, in the event there is a question as to the value of the animal and breeder records, AKC records or records of similar organizations which could help the SCA determine the value of a pet, a class member shall also timely provide authorization for the SCA Defendant, or Defendant's counsel to obtain copies of any such relevant documents.

        2.     The representative plaintiff and class counsel recognize the

measures taken by the Defendant to protect its customers and their pets from injury. These measures included the Defendant recalling substantially more product than had been contaminated. The plaintiff and class counsel acknowledge the good faith efforts of the Defendant to efficiently and expeditiously resolve the subject litigation. Accordingly, neither plaintiff nor class counsel shall attempt to degrade, diminish or otherwise disparage the efforts which the defendant or its representatives or counsel have made in regard to this case.

      3.    Defendant's Good Faith: Defendant shall exercise good faith in considering whether to oppose any claim, in whole or part, by a Class member. It acknowledges that Class members should be compensated for losses, damages, and injuries set forth in this Settlement Agreement by simple, straightforward procedures, and represents and warrants that it will conduct itself so as to accomplish these purposes, not unduly burden Class members or seek to obtain information or records that are not strictly required to assert a defense or objection. This provision may be enforced by motion made by Class counsel after notice and a face-to-face meeting with counsel for the Defendant.

      4.    Accounting: The SCA shall keep and maintain an account of all records and documents received by any Class Member.

      5.    The SCA and any third party neutral may dismiss a claim or an objection or defense to it based upon a claimant's or Defendant's fraud, bad faith, unreasonable conduct or demand, or persistent or willful misconduct.

      6.    All claims by Class members must be initially filed within 90 days of the date of last notice or publication. Any claims filed thereafter shall be forever

barred.  All checks shall be mailed or distributed to Class members within 6 months of the Final Judgment becoming final and non-appealable.

       7.     Pro Rata Distribution; Return of Surplus: If the amount of funds paid by Defendant is insufficient to pay all valid claims actually made and awards by the third party neutral, then Class members shall receive a *pro rata* distribution of the settlement fund, and the SCA shall issue or cause to be issued checks or negotiable instruments to individual Class members for their pro rata shares promptly.  In the event that the amount of claims totals less than the amount of the balance of the common fund, any surplus funds shall be returned to Defendant.

       8.     The representative plaintiff shall be paid $2,500.00 from the settlement fund for her efforts on behalf of the class.  This payment shall be made within ten (10) days of the final approval of this settlement by the Court and the judgment becoming final and non-appealable.

## IV.   INJUNCTIVE RELIEF

The defendant agrees not to use the words "single source" in its marketing for a period of two years after the entry of the final judgment.

## V.   COSTS OF SETTLEMENT

A.    Defendant shall bear all reasonable costs associated with this Class action, including but not limited to the costs of settlement, cost of settlement administration and implementation of settlement, costs of claims administration, notices, mailings,  and court costs.  Defendant shall not be responsible for Plaintiff's or Plaintiffs' counsel's expenses in excess of $10,735 or class counsel's fees in excess of the amount specified in V.B. below.

B.    The SCA, Defendant and Lead Counsel shall maintain and keep all records of expenditures and awards, however denominated, contemplated or provided for in this Settlement Agreement.

## VI.    OTHER PROVISIONS

A.    No Admission: Nothing herein shall constitute an admission of fact or law or be construed or interpreted as any admission as to any assertion, claim, or allegation made by any party.  Defendant specifically denies any wrongdoing or liability, and this Settlement is entered to resolve all claims amicably and does not imply or suggest in any way fault or wrongdoing.

B.    Attorney's fee: Class counsel and Defendant shall not object to an attorney fee of $465,000 and reimbursement for costs and expenses not to exceed $10,735 from the settlement fund.  Class counsel and Defendant expressly agree that such an attorney fee is warranted based on the benefits to be conferred on the class by virtue of this settlement and that the fee is in line with similar attorney fees awarded in cases involving common funds of this amount.  Defendant agrees that the costs and fees of litigation incurred by Class Counsel are reasonable and proper.

C.    Binding effect: Once approved by the Court, this Settlement Agreement shall be binding upon and inure to the benefit of each member of the Class and their successors and assigns as well as to Defendant, its parents, affiliates, subsidiaries, officers, directors, managers, agents, representatives, employees, and successors and assigns.   The settlement shall serve as a release of all claims that were brought or could have been brought as a result of class members use of recalled products.

D.    Choice of Law: This Settlement Agreement shall be governed by and

interpreted according to the substantive law of the State of Tennessee.

      E.     Execution of Counterparts: The signatories may execute this Agreement in counterparts, each of which shall be deemed an original.  An original shall be submitted to the Court, subject to the requirements of its rules governing electronic filing.

      F.     Entire Agreement: This Settlement Agreement, with its exhibits and appendices, constitutes the entire and complete agreement.

      G.     Notices: Any notice as to this Settlement Agreement shall be sent by United States mail, first class to counsel for the parties at the addresses listed below.

Entered into this 1st day of October by:

**Attorneys for the Class:**

s/A. James Andrews
Mr. A. James Andrews, BPR# 015772
905 Locust Street
Knoxville, TN  37902
Telephone:  660-3993

s/Perry A. Craft
Perry A. Craft, BPR # 006056
Craft & Sheppard PLC
214 Centerview Dr Ste 233
Brentwood, TN 37027
Phone: 615-309-1707

**Attorneys for Schell & Kampeter:**

s/William A. Young
s/Jeffrey R. Thompson
William A. Young, BPR #001345
Jeffrey R. Thompson, BPR # 020310
O'NEIL, PARKER & WILLIAMSON
P. O. Box 217
Knoxville, Tennessee 37901-0217
(865) 546-7190

**Diamond Pet Food Settlement Website**

www.RecalledPetFoodSettlement.com

EXHIBIT B

## Welcome to the Diamond Pet Food Settlement Website



- Home
- **Important Dates**
- **Notice**
- **Claim Form**
- **Frequently Asked Questions**
- **Court Documents**
- **Additional Information**

 **Toll Free Helpline:**
1 (800) 960-6651

### Overview

A settlement has been reached in a class action lawsuit about certain Diamond Pet Food products. The settlement provides for an amount of $3.1 million to pay consumers who purchased recalled Diamond Pet Food products, and to compensate dog owners whose dogs were injured by eating Diamond Pet Food products.

### Settlement Benefits

If the settlement is approved and you are a Class Member, you may be eligible to receive a benefit. Diamond has agreed to create a settlement fund of $3.1 million to pay for valid claims and for Court awarded attorneys' fees, costs, and expenses.

The settlement provides that consumers who purchased recalled dog food and did not already return it for a refund may receive money, provided the Class Member establishes that he or she purchased recalled Diamond Dog Food and did not return it.

Additionally, the settlement fund provides that Class Members who submit a valid claim showing that their dog was injured or that they incurred a veterinary bill as a result of Diamond Dog Food will be entitled to payment for veterinary expenses. The settlement also provides that Diamond will pay Court awarded attorneys' fees, costs, and expenses incurred in this lawsuit.

Please review the **Settlement Agreement** for complete details regarding these benefits.

To make a claim for settlement benefits, you must send in a completed Claim Form, **postmarked no later than April 15, 2008**. Download a Claim Form.

### Request Exclusion from the Settlement Class

If you do not want to be legally bound by the settlement, you must exclude yourself by March 16, 2008 or you will not be able to sue Diamond Pet Foods about these claims ever again. If you exclude yourself, you will not get any money from the settlement. To exclude yourself, you must send a letter by mail stating that you want to be excluded. You must include your name, address, telephone number and signature. You must mail your exclusion request **postmarked no later than March 16, 2008** to the following address:

Diamond Pet Food Settlement
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 9214
Dublin, OH 43017-4614

Please review the **Settlement Agreement** for complete details regarding objecting to the settlement.

### Object to the Settlement Terms

If you stay in the Settlement Class, and you wish to object to the settlement, you must notify the Court of your intent to object by February 26, 2008. You may appear at the Settlement Fairness Hearing (see below for details) to present objections to the settlement or any of its terms or provisions, including costs, attorney fees, or otherwise. Please review the **Settlement Agreement** for complete details regarding objecting to the settlement.

**Settlement Fairness Hearing**

The Court will hold the Settlement Fairness Hearing on **March 26, 2008 at 1:30 p.m.** to consider whether to approve the settlement and a request for attorneys' fees by the lawyers representing the Class Members.

### PLEASE NOTE THE FOLLOWING IMPORTANT DATES:

| | |
|---|---|
| **February 26, 2008** | Objection Deadline, postmarked or received |
| **March 16, 2008** | Exclusion Deadline, postmarked or received |
| **March 26, 2008 at 1:30 p.m.** | Settlement Fairness Hearing |
| **April 15, 2008** | Claim Form Deadline, postmarked or received |

---

**Home • Important Dates • Notice
Claim Form • Frequently Asked Questions • Court Documents
Additional Information**

 Prepared by The Garden City Group, Inc.